UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
  PLAINTIFF,                    )       CASE NO. 2:17-CR-00140
                                )
        vs.                     )
                                )
KEITH DRUMMOND,                 )
                                )
  DEFENDANT.                    )
_____)


TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
BEFORE THE HONORABLE EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE
JULY 23, 2018; 8:45 A.M.
COLUMBUS, OHIO


  APPEARANCES:

  FOR THE PLAINTIFF:

        UNITED STATES ATTORNEY'S OFFICE
        By:  KEVIN W. KELLEY
             NOAH R. LITTON
        Assistant United States Attorneys
        303 Marconi Boulevard
        Columbus, Ohio  43215

  FOR THE DEFENDANT:

        By:  LARRY W. THOMAS, ESQ.
        98 Hamilton Park
        Columbus, Ohio 43203




                        - - -


        Proceedings recorded by mechanical stenography,
transcript produced by computer.

2

```
 1                           Monday Morning Session

 2                           July 23, 2018

 3                                - - -

 4        (The following proceeding was held in chambers.)

 5             THE COURT:  I just wanted to touch base.  I don't

 6     think I need anything from any of you.

 7          Did I get the government's voir dire questions?

 8             MR. KELLEY:  Your Honor, I filed those, I think, a

 9     while back.

10             THE COURT:  Okay.  That's it.  That's why.  They're in

11     here somewhere then.

12          You don't have any issues with each other's questions,

13     do you?

14             MR. THOMAS:  No, Your Honor.

15             MR. KELLEY:  No, Your Honor.

16             THE COURT:  Everybody's looked pretty standard so

17     that's good.

18          Anything on your mind we need to take up before we

19     start?

20             MR. KELLEY:  Your Honor, just so it ends up on the

21     record, I did provide Mr. Thomas a notebook of Jencks material

22     yesterday.  I broke down and felt bad for him and decided to

23     give it to him early.  It looks more onerous than it is, and so

24     I wanted to -- I gave him an index to it, I gave him the order

25     of our anticipated witnesses and identified the actual
```

3

1   witnesses for him.  I actually think there's less than 40 pages

2   of witness summaries in total, but there's over 200 pages of

3   stuff because we also gave him criminal history for every

4   witness, as well as a number of witness statements of witnesses

5   we don't intend to call.  So just for if there's any need going

6   forward, I wanted the record to kind of cover that.

7            THE COURT:  And you have the witness list the

8   government has provided then, right?

9            MR. THOMAS:  Yes, Your Honor.

10           MR. KELLEY:  He does not have the witness list I gave

11  the Court for voir dire, Your Honor.

12           THE COURT:  Well, the reason I ask about that is a

13  simple one.  I just want to make sure when we finish voir dire,

14  I've asked about all the names of people who might testify.

15  I'm not going to identify them as defense or prosecution, just

16  these are people who may be testifying.

17           I think I told you before, we don't want somebody's

18  uncle sitting on the panel here.

19           MR. THOMAS:  Yes, sir.

20           THE COURT:  So you're planning on giving that list --

21           MR. KELLEY:  I can.

22           THE COURT:  Well, the reason I'm asking, I want to

23  make sure that if you have anybody to add to that, Mr. Thomas,

24  I need to know as we start the trial.

25           MR. KELLEY:  I think I named almost everyone that

4

1   Mr. Thomas knows, Your Honor.  It was a pretty thorough list.

2         I've got a copy, Larry.  I will give it to you.

3         THE COURT:  I'm not trying to press you about whether

4   you're going to call witnesses or not but, if you are, I just

5   want to make sure we've covered them.  And I'm going to tell

6   them at the same time that don't assume every one of these

7   witnesses is going to testify and if they don't, they don't.

8         MR. THOMAS:  Judge, if I could, I want to put some

9   things on the record, also.

10        THE COURT:  Sure.

11        MR. THOMAS:  Yes, sir, Mr. Kelley was kind enough to

12  give me a notebook yesterday, and I think he correctly

13  indicated it's probably between 150 and 200 pages, and there

14  are a lot of witness statements in here.  And then he also gave

15  me some CDs with some statements of some witnesses.

16        And, Judge, the only problem I have is this:

17        When it comes to investigating and being prepared, I

18  haven't been able to share any of this information with my

19  client.  And, of course, where I wasn't present, and I think

20  that he would have a right that would probably exceed the

21  Jencks to know what witnesses are being called, who is -- who

22  the witnesses are that he must confront, and what they have to

23  say and, with this, I haven't been able to do any investigation

24  on any of this.

25        On the eve of trial, I get these and I get these names

1    and I get these statements, and I haven't been able to share

2    them with my client because I'm under a court order.  And I

3    need to go over this stuff with my client.  I need to know what

4    his position is on these witnesses and what other things need

5    to be done.  So I think it kind of -- it's hard for me to

6    prepare.

7         In other words, Judge, even in a practical sense, if I

8    was to go in, I'm thinking last night, in terms of my opening

9    statement, you know, and being able to say what is what, but I

10   haven't even discussed it with my client so I can't even do an

11   effective opening statement because I don't know what he has to

12   say about these people.  So I would like the Court to allow me

13   an opportunity to go over this stuff with my client --

14        THE COURT:  I assume at this point there's no

15   objection to that, is there?

16        MR. KELLEY:  I'm confident Mr. Thomas will provide

17   effective representation no matter what, Your Honor.

18        THE COURT:  But, I mean, as far as Mr. Drummond seeing

19   these materials.  He has a right to see it now.

20        MR. KELLEY:  He does.

21        THE COURT:  All right.  So that's not -- in other

22   words, now the question is timing.

23        Just to be clear, I think we all understand Federal

24   Criminal Rule 16 doesn't require the government to give names

25   in advance; the state rule in Ohio does.

6

1      But that's just a parenthetical statement on my part.

2          MR. THOMAS:  Yes, sir.

3          THE COURT:  So there's been no violation of any rule

4   here.  And the government knows its obligation under Brady, I'm

5   sure, and Giglio.

6          Your view is that's all been complied with, but at the

7   same time, you're absolutely right.  You've gotten this, your

8   client hasn't seen it.  But this is contemplated by the rules.

9   What's also contemplated is an opportunity for you to use this.

10  I'm open for suggestion if you have any to make.

11         MR. THOMAS:  Judge, I haven't really thought about it

12  in terms of being effective as counsel.  How can I be effective

13  if I don't have an opportunity to go over this and discuss this

14  with him prior to me going in.  I can do the voir dire, but I

15  don't think I can do an opening statement.

16         THE COURT:  Well, I would suggest you share as much of

17  this with him, see how much he can digest.  I mean, I'm hearing

18  you say that you don't have a problem going forward with voir

19  dire.  It's the next step.

20         MR. THOMAS:  It's the next step, being prepared for

21  that and then doing the effective cross-examination of

22  witnesses without talking to him.

23         THE COURT:  Well, why don't we take this one step at a

24  time.  So we'll do the voir dire, you can share this with him.

25  I don't know how much of this he can absorb between now and

1    when we would normally have opening, but if you think there's

2    still an issue we'll address it at that point.

3            MR. THOMAS:  Yes, Your Honor.

4            THE COURT:  I think that's the best we can do at this

5    stage because we do have the jurors here.  Not that that means

6    we're going to go forward if it's going to be unfair, but

7    hopefully some of this can be digested by him.

8            How many witnesses does the government expect?

9            MR. KELLEY:  Your Honor, I think 17 or 18 is all we're

10   going to call, and I identified them on the Jencks cover

11   letter.

12           THE COURT:  That was a bad question on my part.

13           Some of these folks are -- I mean, there are probably

14   some cooperators in here.

15           MR. KELLEY:  Yes.

16           THE COURT:  How many of them?

17           MR. KELLEY:  Five or six cooperators, I would say.

18           THE COURT:  And the rest would be law enforcement

19   and --

20           MR. KELLEY:  Lab people and others.

21           THE COURT:  And you can figure out by now who the five

22   or six are.  That would seem to me to be the focus of

23   Mr. Drummond's issues.

24           MR. KELLEY:  There's less than 40 pages among those

25   five or six.

8

1          MR. THOMAS:  The only thing is, Judge, I mean, when

2     they say it's less than 40 and you have CDs, yeah, if you read

3     them one time.  But if you're trying to dissect these

4     statements and then trying to find information to defend my

5     client, it takes more than one reading, it takes more than one

6     listening.  It takes some time to prepare for the

7     cross-examining.  I can read them, yes, but to actually go over

8     them and look for inconsistencies and things like that, it

9     takes a little bit more time.

10          THE COURT:  I'm somewhat sympathetic.  I think the

11     rules contemplate this scenario.  It's been debated.  There

12     have been lots of attempts to modify Rule 16 and make it more

13     like Ohio, but I think the best I can do is give you an

14     opportunity to convince me that something in between has to be

15     done.  But there are reasons the government doesn't typically

16     do this, of course.  I think this may be the first trial I've

17     had where the government has felt there's some sort of danger

18     to the witnesses where the Jencks material was on the eve of

19     trial.

20          But, again, I think the rule contemplates that.  But I

21     will listen to you if you have some other suggestion to make

22     after we get through the voir dire.

23          MR. KELLEY:  And, Your Honor, Mr. Thomas did

24     address -- and the protective order that we sought and the

25     Court granted has probably made it more difficult, but I also

1    would ask the Court at some point, when we have an opportunity,

2    to remind Mr. Drummond of that just on the record.

3         I have no doubt that Larry has shared it with him, but

4    for purposes of our record, if the Court could just find a

5    moment to remind Mr. Drummond that these materials are subject

6    to a protective order consistent with what the Court had

7    previously ordered, I would appreciate it.

8         THE COURT:  For his eyes, your eyes, and, I don't know

9    if you have anybody else working with you on this, but anybody

10   in Mr. Thomas' employ, of course.

11        MR. KELLEY:  Right.  We're just very concerned,

12   Your Honor, about third parties.  And, again, no concern over

13   Mr. Thomas, but I've assured witnesses I would take every step

14   I could to protect their identities.

15        THE COURT:  All right.  Anything else before we get

16   started?

17        MR. THOMAS:  Just, Judge, I would also like to

18   probably bring to the Court's attention I'm going to be filing

19   some motions in limine because some of this stuff in here

20   pertains to acts -- other acts that Mr. Drummond hasn't been

21   charged with.  More specifically, felonious assaults, assaults.

22        THE COURT:  By the way, we do have a formal

23   stipulation on, I think it's Count 3, the 922(g).

24        MR. LITTON:  We have offered four standalone

25   stipulations.  One of them is his prior conviction.  We have

1    not heard back on whether the defense is accepting those.

2         THE COURT:  This would be on the felon in possession

3    of a firearm count.

4         MR. THOMAS:  Judge, I think I was going to sign that

5    one stipulation.  I have four of them in my briefcase out here

6    that Noah was kind enough to send to me, and I have brought

7    those with me because I wanted to discuss, again, with my

8    client.

9         THE COURT:  Well, let me know on that because what I'm

10   going to do after voir dire before you start your opening is

11   give a preliminary jury instruction going through the elements

12   of each of the three counts.  And, normally, I would say on

13   Count 3 that the issue of the prior conviction has been

14   stipulated so it won't be a triable issue, but that's only if

15   it's stipulated.

16        All right.  Anything else you want to put on the record?

17        MR. THOMAS:  No, Your Honor.

18        THE COURT:  All right.  And you've given me the name

19   of the officer, the police officer?

20        MR. KELLEY:  Sam Chapel, Your Honor.  He's an A.T.F.

21   task force officer.

22        THE COURT:  Right.  So I've got him in here from our

23   last meeting.  And is there anybody else that's going to be at

24   your counsel table?

25        MR. KELLEY:  No, Your Honor.

11

1        THE COURT:  You're going to trust each other to do the

2   audiovisual, in other words?

3        MR. KELLEY:  Not comfortably, but we will, Your Honor.

4        THE COURT:  And, Mr. Thomas, anybody with you besides

5   Mr. Drummond?

6        MR. THOMAS:  No, Your Honor.

7        THE COURT:  All right.  And then, of course, we'll do

8   all the questions together.  And, just as a practical matter,

9   you know, the first question I'm going to ask is a simple one,

10  how many people have scheduling conflicts.  What I typically do

11  is that will be -- we'll get the most hands to that question.

12  And my first question to you once the jury is out is do you

13  care if we let all of them go because, typically, I do.  If

14  they really don't want to be on the jury, I don't think all of

15  you are too interested in keeping them on the jury so we can

16  make things go faster.

17        And I would tell you, if they do put their hand up to

18  that question, I would suggest not asking them a lot more

19  questions because it's probably not going to matter; they're

20  going to be gone.

21        Okay.  I don't have any time limits.  Just as long as

22  you're exercising a good use of time and effective, I'm happy

23  to take as long as we need to in voir dire because that's an

24  important part of the trial.

25        All right.  Very good.  We'll bring the jurors up and

12

1    get ready to start.

2         (Recess taken at 9:21 a.m. to 9:30 a.m.)

3         (The following proceeding was held in chambers.)

4         THE COURT:  So the scuttlebutt from Ms. Green is that

5    you've been talking.

6         MR. THOMAS:  Yes, Your Honor.

7         THE COURT:  Okay.  I mean, is he definite about

8    wanting to change his plea?

9         MR. THOMAS:  Yes, sir.

10        THE COURT:  All right.  So what we need, of course, is

11   a written plea agreement.  I assume that wouldn't take too long

12   to put together.

13        MR. KELLEY:  Your Honor, what I suggested is that he

14   plead to the indictment as is.  I will put on the record that

15   we're going to give him the benefit of three levels for

16   acceptance which, as the Court knows, we would not normally do

17   the morning of trial.  But nothing else changes.  And I think

18   that's the cleanest all the way around and actually would let

19   us go forward if you're okay with that, Larry.

20        MR. THOMAS:  You're not going to limit the relevant

21   conduct?

22        MR. KELLEY:  Yeah, we will.

23        THE COURT:  Let's do this to make it clean and neat.

24   You know, that would give me the certainty to discharge the

25   jury.  But the marshals can keep him here all day.  That's not

1    a problem.

2          Can we have this done by the end of the day?

3          MR. KELLEY:  I'd just assumed we do it this morning,

4    Your Honor.

5          THE COURT:  In other words, I mean, a written plea

6    agreement.  And I know it's simple, but that should make it

7    even easier, shouldn't it?

8          MR. KELLEY:  Okay.  We can do a plea --

9          THE COURT:  But I'll take his plea of guilty now.

10         In other words, we'll send the jurors back downstairs

11   because I do want to thank them before they leave, and we'll do

12   a quick you'll plead guilty.  You understand there's going to

13   be a plea agreement; we're going to do this again.  But you're

14   not leaving here until we either have a trial or you plead

15   guilty to a plea agreement.

16         MR. THOMAS:  Good for me.

17         MR. KELLEY:  All right.  Then I'll limit his relevant

18   conduct to what we had before, but we'll have it in writing

19   that way.

20         MR. THOMAS:  We'll do that.

21         MR. KELLEY:  We can do that plea very quickly,

22   Your Honor.

23         THE COURT:  I'm here all day, obviously.

24         MR. THOMAS:  I've still got the old plea if you want

25   to use it.

14

1        MR. KELLEY:  We've got to change it.

2        THE COURT:  Before I let you go, Judge Holschuh used

3   to tell a story there used to be a judge that would sit by

4   assignment from here in Steubenville and they didn't do many

5   trials there, and it was a big deal to have jurors pulled in.

6   And the night before he had dinner with opposing counsel and

7   they settled the case, but Judge Weinstein told them that

8   morning this courtroom is packed full of jurors.  You may have

9   settled, but you're going to give them a show.  He made them

10  put on a whole day of trial and then told the jurors the case

11  had settled.  So I should probably do that to all of you.  It

12  would be the easiest trial you ever did.

13        MR. KELLEY:  I'm starting to think about it, Judge.

14        THE COURT:  So we'll send the jurors downstairs right

15  now, and then I'll see you in court and we'll do what I call

16  sort of a quick you're going to plead guilty, we're going to do

17  a plea agreement, and you're going to come back here as soon as

18  the plea agreement is done and do the whole thing in full.

19        MR. KELLEY:  And if the Court could indulge us, we'll

20  get it done quick so we can do that yet this morning,

21  Your Honor.

22        MR. THOMAS:  I'm here.

23        THE COURT:  All right.  Thank you.

24     (Recess taken at 9:27 a.m. to 9:34 a.m.)

25

15

1      (The following proceedings were had in open court.)

2          THE CLERK:  Case Number 2:17-CR-140, United States of

3   America vs. Keith Drummond.

4          THE COURT:  Mr. Thomas?

5          MR. THOMAS:  Your Honor, do you want me to approach?

6          THE COURT:  You're fine there.  Thank you.

7      I understand as we have the jury in the courthouse that

8   Mr. Drummond has a change of heart.  Is that his intention?

9          MR. THOMAS:  That is, Your Honor.  At this time he'd

10  ask leave of Court to change his previous plea of not guilty to

11  guilty, Your Honor.

12         THE COURT:  All right.  There are three counts in this

13  case.  And what I'm going to do, Mr. Drummond, is ask you a

14  couple of questions, but there needs to be a written plea

15  agreement in this case which can be prepared forthwith.

16         What I wanted to do is, first, be able to discharge this

17  jury.  I don't want them waiting if this case is not going to

18  be tried.

19         I assume the plea agreement can be done within the hour

20  most likely?

21         MR. KELLEY:  Yes, Your Honor.

22         THE COURT:  All right.  And then we will reconvene

23  with all the formalities required for the formal taking of a

24  guilty plea.

25         But in the short run I'm going to ask Mr. Drummond some

16

1    direct questions.

2          Mr. Drummond, you are charged in Count 1 with conspiracy

3    to possess with intent to distribute more than 28 grams of

4    cocaine base together with heroin, marijuana and oxycodone.

5          How do you plead to Count 1, guilty or not guilty?

6              THE DEFENDANT:  Guilty, Your Honor.

7              THE COURT:  Count 2, you are charged with possessing

8    one or more firearms in furtherance of a drug trafficking

9    offense for which you could be prosecuted in a court of the

10   United States.

11         How do you plead to the second count, guilty or not

12   guilty?

13             THE DEFENDANT:  Guilty, Your Honor.

14             THE COURT:  And the final count, you are charged with

15   knowingly possessing a firearm that had been shipped and

16   transported in interstate commerce after you had been

17   previously convicted of a crime for which you could have been

18   imprisoned for more than one year.

19         How do you plead to Count 3, guilty or not guilty?

20             THE DEFENDANT:  I'm not understanding that,

21   Your Honor.

22             THE COURT:  This is being a felon in possession of a

23   firearm charge, basically.

24             THE DEFENDANT:  Guilty, Your Honor.

25             THE COURT:  All right.  Now, to be clear, I'm going to

17

1  be asking you a lot more questions under oath within the hour.

2  We're going to go through a much more formal taking of the plea

3  of guilty.  There are things I need to know about you and also

4  about what you know of these charges.  We're going to do that

5  in just a few moments.  But unless there is an objection, I'm

6  going to go ahead and discharge the prospective jurors.

7           MR. THOMAS:  No objection.

8           THE COURT:  All right.  Then we'll reconvene once the

9  plea agreement is signed sometime later this morning.

10          Thank all of you.  With that, we'll be in recess.

11       (Recess taken at 9:37 a.m. to 11:30 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

1    (The following proceedings were had in open court.)

2        THE CLERK:  Case Number 2:17-CR-140, United States of

3    America vs Keith Drummond.

4        Will counsel and defendant please approach.

5        THE COURT:  Counsel, good morning to all of you again.

6        Starting with the government, please enter your

7    appearances.

8        MR. KELLEY:  Assistant United States Attorneys Kevin

9    Kelley and Noah Litton, Your Honor.

10       MR. THOMAS:  Good afternoon again, Your Honor.

11   Larry Thomas on behalf of Keith Drummond.

12       THE COURT:  And, Mr. Kelley, would you please indicate

13   the status of this case?

14       MR. KELLEY:  Yes, Your Honor.

15       The defendant had previously entered not guilty pleas to

16   a superseding indictment.  Earlier this morning he changed

17   those pleas to guilty to three counts.

18       Count 1 was a conspiracy to distribute narcotics, Count

19   2 is possession of a firearm in furtherance of that drug

20   trafficking crime, and Count 3 was possession of a firearm by a

21   previously convicted felon.

22       The parties have since the entry of those guilty pleas

23   executed a written plea agreement, and that plea agreement has

24   now been filed with this court.

25       THE COURT:  Thank you.

1       Mr. Drummond, you were before me weeks ago and pleaded

2  not guilty to three counts in the indictment.  It has now been

3  indicated that you wish to change those pleas from not guilty

4  to pleas of guilty and also be bound by a plea agreement.

5       Is that correct?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  And have you had ample opportunity to

8  discuss these change of pleas with your counsel in this case?

9       THE DEFENDANT:  Yeah, I did, but --

10      THE COURT:  All right.  I'm going to ask you directly,

11 you are charged in Count 1 with conspiracy to distribute and to

12 possess with intent to distribute over 28 grams of crack

13 cocaine, together with heroin, marijuana, cocaine and

14 oxycodone.

15      How do you plead to Count 1, guilty or not guilty?

16      THE DEFENDANT:  Guilty, Your Honor.

17      THE COURT:  In Count 2 you are charged with possession

18 of a firearm in furtherance of a drug trafficking crime, in

19 violation of Chapter 18 of the United States Code, Section

20 924(c).

21      How do you plead to that count, guilty or not guilty?

22      THE DEFENDANT:  Guilty, Your Honor.

23      THE COURT:  And, finally, you are charged in Count 3

24 with a violation of Chapter 18, United States Code, Section

25 922(g), possession of a firearm by a previously convicted

20

1    felon.

2        How do you plead to those charges, guilty or not guilty?

3        THE DEFENDANT:  Guilty, Your Honor.

4        THE COURT:  Before I can accept any of your offered

5    pleas of guilty, I have to ask you a number of questions.  I

6    have to make sure you're making these pleas voluntarily, that

7    you have a full understanding of the nature of the charges and

8    all of the possible consequences of your offered plea of

9    guilty.  These are all standard questions I ask in every case.

10   I need to ask them under oath so I'll ask the courtroom deputy

11   to please swear in Mr. Drummond.

12       (Whereupon, the Defendant was sworn.)

13       THE COURT:  My first question is do you understand you

14   are now under oath?

15       THE DEFENDANT:  Correct.

16       THE COURT:  All right.  How old are you today?

17       THE DEFENDANT:  40.

18       THE COURT:  40?

19       And how much formal education or schooling have you

20   received?

21       THE DEFENDANT:  Eleventh grade.

22       THE COURT:  All right.  Do you have any type of

23   physical or mental illness at this time?

24       THE DEFENDANT:  Yeah.  I have mental disabilities.

25   I'm supposed to see psych for it, been on and off my meds for

1    about three or four years now.

2              THE COURT:  And what is the condition?

3              THE DEFENDANT:  Paranoid schizophrenic, delusional.

4              THE COURT:  All right.  Are you currently taking any

5    medication for that condition?

6              THE DEFENDANT:  I asked mental health to see me ever

7    since I been here, but they've never given me any medication.

8              THE COURT:  So, over the last 24 hours, have you taken

9    any type of prescription medication?

10             THE DEFENDANT:  I took my acid reflux medication, I've

11   taken my high blood pressure medication and my inhaler, and I

12   just had a breathing treatment upstairs.

13             THE COURT:  All right.  So let's put those in a

14   different category.  You just mentioned breathing and acid

15   reflux.  You've taken medication for those conditions recently;

16   is that correct?

17             THE DEFENDANT:  This morning, yes, sir.

18             THE COURT:  And those medications don't prevent you

19   from understanding what we're doing here today, do they?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Now, let's talk about the schizophrenia

22   you just mentioned.  Have you been able to understand

23   everything to do with this case in terms of documents and court

24   proceedings?

25             THE DEFENDANT:  I have.  Not -- I don't fully, fully

22

1  completely honestly understand everything, all the

2  stipulations, but I'm in compliance that I think it's like the

3  best thing for me to do as far as being able to be able to get

4  home to my family as soon as possible.

5      THE COURT:  But have you been able -- you understand

6  the charges against you in this case, don't you?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  And you understand the possible

9  consequences you face whether you go to trial, whether you

10  don't, whether you plead guilty or whether you plead not

11  guilty?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  You understand all that?

14      THE DEFENDANT:  Yes, sir.

15      THE COURT:  Mr. Thomas, to be clear, do you have any

16  doubt as to Mr. Drummond's competence in this case?

17      MR. THOMAS:  Oh, no, Your Honor.

18      THE COURT:  All right.  By the way, in addition to

19  what I asked you about the medications you've taken over the

20  last 24 hours, have you taken any other type of narcotic drug

21  of any kind or alcoholic beverage?

22      THE DEFENDANT:  No.

23      THE COURT:  I'm going to ask you some questions about

24  your relationship with your lawyer in this case, Mr. Larry

25  Thomas.  As I mentioned, these are all standard questions.

23

1    Have you told him everything you know about this case?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  Do you believe then he has had all the

4    information necessary to give you proper legal advice?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  And are you satisfied with his advice and

7    representation?

8        THE DEFENDANT:  I'm satisfied, but there's one issue

9    that we just discussed that I wasn't, like -- didn't sit well

10   with me.  I was understanding -- understanding, like, if I

11   would have pled out -- if I would have pled out previously,

12   that my sentence would have been lesser.  But I only had an

13   hour to decide the last time we was here, and then as I --

14   Mr. Kelley has said, like, I had that hour and approximately

15   three-week time lapse, I do believe, to where I could have

16   initially still took that original plea agreement, and I just

17   didn't understand.  Like, if I fully understood everything at

18   that present point in time, I would have did that instead of

19   agreeing to this deal right now.  But since this is the only

20   option that I have left and I just agree to it, I guess.

21       THE COURT:  You remember I had you in here and we had

22   a very formal proceeding where I asked you a lot of questions

23   about the offer the government had put on the table.

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  And I was satisfied that you understood

24

1   that offer.  You did understand it, didn't you?

2       THE DEFENDANT:  I understood it, but to a certain

3   point.  You know what I'm saying?  I thought, like, under those

4   conditions, I still was -- still likelihood a chance that I

5   could receive five years of sentence.

6       THE COURT:  What I remember is Mr. Kelley told you at

7   the time that if you didn't accept it then, that it would never

8   be offered again.  And I asked Mr. Kelley to extend it for a

9   couple hours to let you think about it.

10      Do you remember that?

11      THE DEFENDANT:  Correct.

12      THE COURT:  And you still turned it down.

13      THE DEFENDANT:  Yeah, I still turned it down.  But

14  this is under -- my train of thought was if I waited, I still

15  had a chance of receiving a different deal.  That's -- that's

16  what I understood.

17      THE COURT:  You were hoping for that, would that be

18  fair?

19      THE DEFENDANT:  Yeah, I mean.

20      THE COURT:  But the trouble is the government took the

21  position it was now or never, and I don't think you took that

22  to heart.

23      THE DEFENDANT:  I did everything I could as far as --

24  within an hour, yeah.

25      THE COURT:  Basically, you've been working with

25

1   Mr. Thomas, and he's given you good legal representation from

2   your perspective; is that correct?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  All right.  Now, I'm going to review with

5   you with regard to each one of these counts what it is the

6   government would have to prove to a jury beyond a reasonable

7   doubt before you could be convicted.  I have to be clear that

8   you know all this.

9         With regard to Count 1, the government would have to

10   prove three different factors, or elements, each one beyond a

11   reasonable doubt.

12         First, that you and at least one other person conspired

13   to distribute and to possess with intent to distribute 28 grams

14   or more of crack cocaine, heroin, marijuana, cocaine and

15   oxycodone;

16         Second, that you knowingly and voluntarily joined this

17   criminal conspiracy;

18         And, third, that this conspiracy existed within the

19   Southern District of Ohio at the time alleged in what is called

20   the superseding indictment.  That's the most recent indictment.

21         Do you understand all that?

22         THE DEFENDANT:  Correct.

23         THE COURT:  All right.  With regard to Count 2, the

24   government would have to prove three different elements.

25         First, that you committed the crime we just discussed in

26

1    Count 1, conspiracy to distribute and possess with intent to

2    distribute 28 grams or more of crack cocaine, heroin,

3    marijuana, cocaine and oxycodone;

4         And that you, second, knowingly possessed a firearm as

5    described in Count 2 of the superseding indictment;

6         And, third, that the possession of the firearm or

7    firearms was in furtherance of the crime charged in Count 1.

8         Do you understand that?

9         THE DEFENDANT:  Yes, sir.

10        THE COURT:  And the last count, Count 3, the

11   government would have to prove four elements or facts.

12        First, that you were previously convicted of a felony

13   and that, thereafter, you knowingly possessed a firearm

14   described in Count 3;

15        Third, that the firearm crossed the state line prior to

16   or during your alleged possession of the gun;

17        And, fourth, that this offense occurred in the Southern

18   District of Ohio at the approximate time alleged in the

19   superseding indictment.

20        Do you understand all of that?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  I'm going to review with you the possible

23   penalties you face with all three counts together because they

24   interact with each other.

25        With regard to Count 1, do you understand you face a

27

1  mandatory minimum term of 10 years of imprisonment?

2          THE DEFENDANT:  10 years?

3          THE COURT:  Yes.

4          THE DEFENDANT:  Yeah.  Yes, sir.

5          THE COURT:  And you face -- that's the lowest you can

6  get, but you face a maximum of up to life imprisonment together

7  with a term of supervised release of at least eight years and a

8  fine not to exceed $8 million.

9      Do you understand all of that?

10          THE DEFENDANT:  Yeah.

11          THE COURT:  Okay.  Supervised release, I mentioned to

12  you, would be a period of time that would begin after you're

13  released from imprisonment.  You'd be supervised by a probation

14  officer of this court.

15      With regard to all the terms of supervised release we'll

16  be discussing in this case, do you understand if you didn't

17  meet those terms and conditions, that I can cause you to be

18  reimprisoned?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  All right.  With regard to Count 2, you

21  face a term of imprisonment of at least five years to life and,

22  to be clear, this five-year minimum has to be consecutive,

23  meaning added to the 10 years we just discussed in Count 1.

24      Do you understand that?

25          THE DEFENDANT:  Yes, sir.

28

1          THE COURT:  That would mean a minimum of 15 years

2   between Count 1 and Count 2, and you understand that.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  All right.  You also face a term of

5   supervised release of up to five years on Count 2 and a fine of

6   up to $250,000.

7       Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  With regard to Count 3, you face a term of

10  imprisonment not to exceed 10 years.  In this case, this

11  particular count, that could be consecutive or it could be

12  concurrent.  It's not automatically stacked on top of the other

13  one as Counts 1 and 2 are.

14      Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you understand you face a term of

17  supervised release not to exceed 3 years and a fine not to

18  exceed $250,000?

19      Do you understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Do you also understand that you are

22  forfeiting any firearms, ammunition and drug proceeds as laid

23  out in the superseding indictment?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And, finally, you will be assessed a $300

1    special assessment.  In other words, $100 per count of the

2    three counts of this case.

3          And you understand that as well.

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  Do you understand that each of the three

6    counts you are offering to plead guilty to are felony counts?

7             THE DEFENDANT:  Yes, sir.

8             THE COURT:  That means, based on each one of these

9    counts, you will then become a felon.  And based on these

10   charges alone, there will be a number of automatic legal

11   consequences.

12         If you are a citizen, you will lose a number of civil

13   rights that you now have, such as your right to hold public

14   office, your right to vote, your right to serve on a jury, and

15   your right to possess a firearm.

16         Do you understand that?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  If you are not a citizen, it could result

19   in your being deported from this country, being later denied

20   citizenship and later denied readmission to the United States.

21         Do you understand that as well?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  If you are a naturalized citizen, it could

24   result in the government seeking to take away your citizenship.

25         Do you understand that as well?

30

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  We're going to talk for a moment about the

3   sentencing guideline range.  You and Mr. Thomas have discussed

4   how the sentencing guideline range applies in this case, have

5   you not?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  I want to be clear, we'll start with Count

8   1, there's a minimum 10 year sentence, maximum life.  The

9   sentencing guidelines will not change that.  What the

10  sentencing guidelines will do is take that range of 10 years to

11  life and look at the facts in this case, your past, put those

12  all together and come up with a range between the 10 years and

13  life.

14       Do you understand that?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  And, likewise, with Count 2, it will not

17  change the range of five years to life, but it will narrow that

18  range to a period of months rather than years.  And with regard

19  to Count 3, between zero and 10 years, it will also come up

20  with a guideline range for that offense as well.

21       So, in the end, there will be an opportunity for you and

22  Mr. Thomas to review how a probation officer has computed the

23  guideline range.  You may object, if appropriate, the

24  government may object, if appropriate.  And, in the end, I will

25  consider the sentencing guideline range, but you understand I

31

1   am only going to treat it as advisory, and I'm not required to

2   give you a sentencing guideline range sentence.

3          Do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  All right.  I next want to review with you

6   a number of rights you have under the Constitution.

7          You understand you have the right to continue in your

8   earlier pleas of not guilty and then have the case tried before

9   a jury in this court?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  All right.  If you chose that route, you

12  would have the right to a speedy and public trial where you

13  would have the right to the assistance of a lawyer throughout

14  the trial, you would have the right to confront and

15  cross-examine any witnesses testifying against you, and you

16  could not be compelled to incriminate yourself; meaning, you

17  would not have to testify unless you chose to do so in your own

18  defense.

19         At a trial, you would be presumed innocent unless the

20  government could convince the jury with competent evidence that

21  you were guilty beyond a reasonable doubt.

22         You would also be entitled to force or subpoena

23  witnesses into court to testify on your behalf.

24         Do you understand, if I accept your offered plea of

25  guilty, you will be giving up all of these rights?

32

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you understand, if I accept your

3   offered plea of guilty, there will not be a trial in this case

4   so that by offering to plead guilty, you are also offering to

5   give up your right to a trial?

6        THE DEFENDANT:  Yes.

7        THE COURT:  In just a moment I'm going to ask you some

8   questions about what happened in this case.  I will have to be

9   convinced that you did, in fact, commit these offenses.

10       So do you understand you will also have to give up your

11  right not to incriminate yourself before I can accept your

12  offered pleas of guilty?

13       Do you understand that?

14       THE DEFENDANT:  No, not really.

15       THE COURT:  In other words -- well, to be precise,

16  there's a statement of facts attached to your plea agreement.

17  I'm going to ask you questions about that statement.  I want to

18  make sure it's accurate and that you did everything that that

19  statement says you did; otherwise, you wouldn't be guilty of

20  these offenses.  So you're going to have to explain to me

21  whether the statement of facts is or is not true.

22       Do you understand that?

23       THE DEFENDANT:  Yeah, I understand.  Can I get a

24  moment, please?  I'm not -- this is not -- this is not really

25  sitting well with me at all.  It's like it's bothering me for

33

1   the simple fact like when you just asked me do I agree to those

2   statements of facts that you're about to ask me, you know what

3   I'm saying?

4           THE COURT:  Right.

5           THE DEFENDANT:  I'm just -- I'm more or less pleading

6   out.  I'm just trying to get home to my family as soon as

7   possible.  And, you know what I'm saying, I'm having a hard

8   time dealing with myself more or less pleading to something

9   that I necessarily did not do.

10          THE COURT:  Well, let me be clear about this.  Let's

11  just talk about a typical defendant, not you, for a second.

12          All right.  There's a lot of pressure about whether you

13  plead guilty or whether you plead not guilty, and it can be

14  very upsetting, particularly on the day of a trial as today is.

15  All right.  So if you feel pressure because of the fact you're

16  facing a jury trial, that's one thing.  What I will not permit

17  you or anyone else to do is to tell me they didn't do something

18  and then let them plead guilty to it.  That's not going to

19  happen so we'll have to be clear on that.

20          If you didn't do this, then you need to go to trial.  If

21  you did do this and you want to plead guilty and hope that you

22  get a better arrangement when this is all done under the

23  sentencing guidelines, you can do that.

24          What you can't do is tell me you didn't do this and

25  expect me to take your guilty plea because I will not do that.

34

1   All right.  So you understand, though, before we can

2   finalize this process, I am going to ask you some questions

3   about the statement of facts.  We'll do that in a minute, and

4   then you'll decide what you're going to tell me.

5        Do you understand that?

6        THE DEFENDANT:  (Defendant nods head.)

7        THE COURT:  All right.  There is a written plea

8   agreement in this case that has just been filed indicating that

9   you and Mr. Thomas and Mr. Kelley and Mr. Litton have agreed to

10  a plea of guilty with certain conditions.  I'm going to ask

11  Mr. Kelley to summarize the relevant terms and conditions of

12  the plea agreement.

13       MR. KELLEY:  Thank you, Your Honor.

14       The plea agreement, that consists of primarily

15  standardized language that our district uses, has a total of 16

16  paragraphs.  Among the highlights are that the defendant does

17  understand the potential penalties as outlined by the Court,

18  including the mandatory minimums of both 10 years and 5 years

19  consecutive.

20       The parties have reached some agreements as it relates

21  to the sentencing guidelines.

22       We agree that the relevant conduct in this case is

23  limited to just 112 to 196 grams of crack cocaine or, in other

24  words, an offense level of 26.  That's also based on using

25  other substances and coming up with an equivalency.  So the

35

1  relevant conduct is only 112 to 196 grams.

2      We've also agreed that the defendant should be receiving

3  a two-level enhancement for maintaining a premises for

4  distribution of controlled substances.

5      The parties have also agreed, though, the defendant

6  would receive no enhancement for a role in this case.

7      The parties have also agreed that he would receive three

8  levels for acceptance.

9      As the Court is aware, that's not typical on the day of

10  trial, but we've made the agreement that he would receive three

11  levels for acceptance of responsibility.

12      The defendant has also agreed to the forfeitures as

13  outlined in the plea agreement, Your Honor, as specified in the

14  superseding indictment as it relates to the guns and the

15  proceeds.

16      And, finally, there is an appeal waiver.  The defendant

17  has agreed to waive any right to appeal with the exception of

18  ineffective assistance of counsel or prosecutorial misconduct.

19      There are no additional promises or agreements that are

20  not contained within the plea agreement itself, Your Honor.

21          THE COURT:  Thank you.

22      Mr. Thomas, in your view, is that a fair representation

23  of the terms and conditions of the plea agreement?

24          MR. THOMAS:  Yes, it is, Your Honor.

25          THE COURT:  And, Mr. Drummond, is that also your

36

1   understanding of your plea agreement?

2          THE DEFENDANT:  Yes, sir, Your Honor.

3          MR. KELLEY:  And then, as the Court is aware,

4   Attachment A of the plea agreement is our statement of facts,

5   Your Honor.

6          THE COURT:  Right.  We'll talk about that in some

7   detail in just a moment.

8          I want to review one paragraph with you.  There is a

9   waiver of appeal in this case.  Typically, a defendant has a

10  right to appeal the sentence but, in this case, there has been

11  an agreement reached, and part of the agreement is that there

12  is no right to appeal with two limited exceptions.

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  One limited exception would be if the

16  government committed prosecutorial misconduct, and the other

17  would be if Mr. Thomas were constitutionally ineffective on

18  your behalf.  You've preserved those, but I'd just advise you

19  those are very narrow rights that are preserved.  The overall

20  right to appeal is otherwise waived.  Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  All right.  Now, we're going to get to the

23  statement of fact.  Pages 7 and 8 of the agreement goes through

24  a statement of facts involving the conduct that goes with the

25  three charges.

37

1      Mr. Thomas, if I could ask you to give this to the

2  defendant.  Now, I believe this was signed this morning, so

3  hopefully you're still familiar with this.

4      You recognize this statement; is that correct?

5          THE DEFENDANT:  Do I need to read all this or --

6          THE COURT:  If you go to the second page, your

7  signature appears to be on there.  Let me ask you, is this your

8  signature?

9          THE DEFENDANT:  Oh, this is the paper I already

10 signed.  Okay.  I thought it was something different.  I'm

11 sorry.

12         THE COURT:  This is the same?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  So you read it before you signed it; is

15 that correct?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And was everything in that statement

18 correct?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Is everything -- as far as you know,

21 nothing has changed in between that would make you question

22 that statement?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  And you're offering to plead guilty to the

25 three charges because you actually committed those offenses; is

1   that your testimony?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  In light of all my questions, is it still

4   your intention to plead guilty to Counts 1, 2 and 3?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  I've observed the appearance and the

7   responsiveness of the defendant in giving his answers to my

8   questions.

9          Based upon my observations of him and answers given, I

10  am satisfied that he is in full possession of his faculties.

11         With regard to any physical or mental illness, we've

12  already discussed those conditions, he does appear to have

13  several, but I'm satisfied they do not prevent him from

14  understanding these proceedings.

15         He is not under the influence of narcotics or alcohol,

16  and he understands the proceedings we are completing.  He

17  understands the nature and the meaning of the charges and all

18  of the attendant consequences of his offered plea of guilty,

19  and he is aware of the terms and conditions of the plea

20  agreement.

21         From all of this, I find that the three pleas of guilty

22  have been made voluntarily with a full understanding of the

23  nature of the charges and consequences of his offered pleas of

24  guilty.  I accept all three pleas of guilty, and I also accept

25  the terms and conditions of the plea agreement.

39

1      Are there any other matters we need to take up at this

2  time, counsel?

3      MR. KELLEY:  Your Honor, just a couple matters.

4      One, we have retrieved the notebook that contained the

5  Jencks material in this case; however, Mr. Thomas has asked as

6  a courtesy if we would consider sharing redacted versions with

7  him.  We will make some redacted versions so that he can use

8  those in the preparation of the PSI.  But I would ask the Court

9  to remind Mr. Drummond that there is a protective order that

10  fairly strictly limits any sharing of that information.  And,

11  in particular, we do not want any of the names of the witnesses

12  shared, and I believe the Court has so ordered.

13      THE COURT:  In other words, Mr. Thomas has full access

14  to it and he can share that with Mr. Drummond, but Mr. Drummond

15  can't share it with anybody else.

16      You understand that, Mr. Drummond?

17      THE DEFENDANT:  Yes, sir.

18      MR. KELLEY:  Thank you, Your Honor.

19      There's nothing additional.

20      THE COURT:  Mr. Thomas, anything additional?

21      MR. THOMAS:  No, Your Honor.  Thank you.

22      THE COURT:  Thank you all very much.  With that, we'll

23  be in recess.

24      (Proceedings concluded at 11:55 a.m.)

25                          - - -

40

1          C E R T I F I C A T E

2

3          I, Darla J. Coulter, do hereby certify that the

4     foregoing is a true and correct transcript of the proceedings

5     before the Honorable Edmund A. Sargus, Jr., Chief Judge, in the

6     United States District Court, Southern District of Ohio,

7     Eastern Division, on the date indicated, reported by me in

8     shorthand and transcribed by me or under my supervision.

9

10                              s/Darla J. Coulter
                                Darla J. Coulter, RMR, CRR
11                              Official Federal Court Reporter

12

13

14                              October 10, 2019

15

16

17

18

19

20

21

22

23

24

25